UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRASERDB., INC., a New York Corporation,

 Plaintiffs,

vs.

CRAIG SNYDER, an individual,

 Defendant.

JUDGE CASTEL

Case No. 10 CV 3985



## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, FraserDB, Inc. ("FraserDB"), by its attorneys, Lewis & Hand LLP, for its Complaint, alleges:

### NATURE OF ACTION

This is an action seeking specific performance, damages for breach of a contract to sell the domain name <CamRoulette.com> (the "Domain Name"), and for fraud.

### JURISDICTION AND VENUE

1. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332, giving this Court original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2. The Court has personal jurisdiction over the defendant pursuant to CPLR §§ 301 and 302.

3. Defendant claims, on the website located at www.TheCraigSnyder.com, that he is, "[a] veteran of the Boston book and magazine publishing industry," and that his "well-rounded expertise in the areas of graphic design, print production, web publishing, desktop support and I.T. make him a valuable asset to your individual, project or company-related needs. Services also include copywriting and editing for print and web."

4. The TheCraigSnyder.com website also states that, "[b]ased in South Florida, Craig is available for hourly, short-term and long-term assignments regionally and nationally."

5. Defendant entered into an agreement to sell the Domain Name with a resident of this state. Defendant sent a PayPal invoice into New York State, and sent emails to FraserDB in New York. Defendant's willful and fraudulent breach of its agreement to sell the Domain Name has caused harm in New York. Upon information and belief, defendant regularly does or solicits business, or derives substantial revenue from goods used or consumed or services rendered in the state. Upon information and belief, defendant expects or should reasonably expect its acts to have consequences in the state and derives substantial revenue from interstate or international commerce as a freelance consultant.

## THE PARTIES

6. Plaintiff FraserDB is a New York corporation with its principal place of business in New York, NY.

7. Upon information and belief, Craig Snyder is an individual, residing in Interlachen, Florida. Upon information and belief, Craig Snyder also owns a

consulting company, and provides consulting services, both "regionally and nationally."

## FACTUAL BACKGROUND

### Chat Roulette

8. In order to understand the value of the Domain Name, one need look no further than chatroulette, one of the latest phenomena sweeping the Internet.

9. Upon information and belief, chatroulette was created by a Russian teenager in November 2009. That site pairs users with a random webcam partner anywhere in the world. If the user does not wish to chat with a webcam partner, the user can click "next" at any time.

10. Chatroulette has become incredibly popular in a brief amount of time. In early November 2009, shortly after the site launched, it had 500 visitors per day. One month later there were 50,000. Upon information and belief, chatroulette currently attracts millions of users, and has been featured in The New York Times, New York Magazine, and on Good Morning America, CNN, Fox News, CBS, and The Daily Show with Jon Stewart, among other programs.

### The Purchase

11. On February 12, 2010, Fraser Brown, the President of FraserDB, performed an availability search for the Domain Name, and found that it was already registered – to defendant.

12. Recognizing the potential value of the Domain Name, FraserDB emailed defendant and offered him $600 to purchase the Domain Name.

13. Defendant responded the same day, stating: "[t]his domain has had lots of interest

recently, last week I was offered $750 by a guy in Canada but he has yet to follow through. If you can offer the same, I'll put him off and sell this to you immediately. Better yet, *if you can bid $700 with immediate/quick payment, it is yours.*" (emphasis added).

14. Fraser Brown responded later the same day, stating: "actually send me a paypal request for it for $700 and I'll put it through now."

15. Half an hour later, defendant responded: "I have just made the PayPal request."

16. Immediately thereafter, Fraser Brown received a PayPal request from defendant requesting $700 for the purchase of the Domain Name. FraserDB immediately paid the invoice, irrevocably accepting defendant's offer to sell the Domain Name.

17. On February 13, 2010, Fraser Brown followed up on his purchase: "Hi Craig, Send me a quick hello to assure me I did not sent[sic] money into cyberspace unwisely!"

18. Defendant responded ten minutes later: "[j]ust woke up, handling everything now!"

19. Later the same day, Fraser Brown received an email notice from PayPal that his transaction was being refunded, accompanied by the following note: "I'm refunding you this really quick while I get things straight with Dynadot. I won't require you pay again until the domain is pushed."

20. Dynadot was the registrar of the Domain Name. To "push" a domain name means to transfer it into another user's account, in this case FraserDB's.

21. Defendant, whose AIM is "Inphektid," failed to transfer the Domain Name as

promised to FraserDB's account.

22. On February 13, 2010, FraserDB registered the domain name <SpinTheCam.com> for use in connection with the development of a chatroulette-style social networking site. FraserDB viewed CamRoulette.com as a far superior name for the venture, and the best name available for a chatroulette-style site.

23. After several days had passed, on February 16, 2010, Fraser Brown asked defendant: "What is happening? You have not responded . . . regarding the transfer and it is now Tuesday. Please let me know." Defendant failed to respond.

24. Later that day, Fraser wrote defendant: "Please fill me in. The Paypal payment was cancelled . . . Whats [sic] happening?" Defendant again failed to respond.

25. On March 3, 2010, Fraser wrote again: "A deal is a deal. Significant investment has been made at our side relying on good faith." Defendant failed to respond.

26. On April 7, 2010, the reason for defendant's silence became clear. Defendant had breached his agreement to sell the Domain Name to FraserDB by selling it to a third party, a domain investor named Adam Strong, for $1,400. The sale took place on February 14, 2010 – two days after defendant sold the Domain Name to FraserDB. Adam Strong sold the Domain Name at auction to an entity called FCI, Inc. for $151,000.

27. Upon information and belief, defendant also committed fraud by hiding and concealing the unlawful and invalid sale of the Domain Name to Adam Strong.

28. Upon information and belief, the Domain Name is uniquely valuable for

development and use with a "roulette" style Internet Web site. The Domain Name has the closest possible wording to the original chatroulette name and global phenomenon while also describing the function performed, which is switching randomly from one webcam feed to another. There are no substitute domain names that are as valuable or as suitable as the Domain Name for the uses intended by FraserDB.

## CLAIM I
### (BREACH OF CONTRACT)

29. FraserDB realleges paragraphs 1-28 of this Complaint.

30. Defendant offered to sell the Domain Name to FraserDB for $700.

31. FraserDB accepted defendant's offer twice. Defendant's email offering to sell the Domain Name to FraserDB for $700 constituted an offer to sell. As such, FraserDB accepted that offer by requesting a PayPal invoice and agreeing to pay for the Domain Name immediately. To the extent that defendant's PayPal request for money constituted an offer to sell the Domain Name, FraserDB also accepted that offer by making payment via PayPal in the exact amount requested, within the time specified.

32. Defendant is not a minor, and is under no legal disability that would prevent him from entering into a binding contract.

33. Defendant entered into a valid and binding contract to sell the Domain Name to FraserDB for $700, which contract defendant breached by selling the Domain Name to Adam Strong.

34. As a result of that breach, FraserDB suffered damages in an amount to be determined at trial, but in no event less than $150,300.

## CLAIM II
### (Fraud)

35. FraserDB realleges paragraphs 1-34 of this Complaint.

36. FraserDB paid for the Domain Name on February 12, 2010.

37. Upon information and belief, on February 13, 2010, in response to FraserDB's email inquiring into the status of the Domain Name's transfer, defendant fraudulently misrepresented that he was "handling everything now!" The clear impression conveyed by defendant was that he was in the process of transferring the Domain Name to FraserDB. In fact, defendant had no intention of transferring the Domain Name at that time, but had secretly agreed to sell it to Adam Strong for $1,400.

38. Upon information and belief, on February 13, 2010, defendant fraudulently misrepresented that he was "refunding you this really quick while I get things straight with Dynadot. I won't require you to pay again until the domain is pushed." In fact, defendant had no intention of pushing the Domain Name at that time, but had secretly agreed to sell it to Adam Strong for $1,400.

39. Upon information and belief, defendant would not have refunded the PayPal payment unless he had already received Adam Strong's offer to purchase the Domain Name. Defendant deceived FraserDB about the reason for the refund, and his intent to complete the sale.

40. Defendant's intentional misrepresentations and omissions were material, in that they allowed defendant to complete the unlawful and invalid sale of the Domain Name to Adam Strong, without allowing FraserDB legal recourse, at a time when he could have stopped the sale.

41. FraserDB relied on defendant's material misrepresentations, and suffered substantial damages as a result thereof in an amount to be determined at trial, but in no event less than $150,300.

42. FraserDB also seeks punitive damages from defendant for defendant's willful acts in an amount to be determined at trial.

### CLAIM III
### (Specific Performance)

43. FraserDB realleges paragraphs 1-42 of this Complaint.

44. Dynadot, the registrar of record for the Domain Name at the time of the agreement is located in California. Dynadot's Services Agreement provides that California law is the governing law under that agreement. As such, the law governing the formation of the Domain Name is California law.

45. Domain names constitute property under California law. Each domain name is unique.

46. .Com top-level domain names are the most popular and the most valuable domain names worldwide. Given the scarcity of .com domain names, desirable names have sold for figures ranging from the hundreds of thousands to the hundreds of millions of dollars.

47. After defendant breached the contract and sold the Domain Name to Adam Strong, the Domain Name sold at a domain name auction for $151,000.

48. Domain Name auctions typically reach an audience of domain name investors, but generally do not do as good a job of reaching out to potential purchasers who are not domainers. Upon information and belief, the Domain Name would have sold

for more than $151,000 on the open market.

49. The Domain Name cannot be replaced. It is one of a kind. Its value to FraserDB for its use in a chatroulette-style Website far exceeds the value paid by FCI, Inc. at auction.

50. The sale of the Domain Name to Adam Strong was a fraudulent conveyance, which conveyed only void title to the Domain Name.

51. The subsequent sale of the Domain Name to FCI, Inc. also failed to convey valid title to the Domain Name.

52. Because the Domain Name is unique and no sufficient remedy at law exists to make FraserDB whole, FraserDB respectfully requests that this Court grant the remedy of specific performance.

## PRAYER FOR RELIEF

WHEREFORE, FraserDB prays for judgment as follows:

a. an order directing that defendant specifically perform the contract;

b. an award of damages for breach of contract in an amount to be determined at trial, but in no event less than $150,300;

c. an award of damages for fraud in an amount to be determined at trial, but in no event less than $150,300;

d. punitive damages;

e. an award of attorney fees; and

f. granting such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
      May 12, 2010

                                      LEWIS & HAND LLP

                                      By: _____
                                      Brett E. Lewis, Esq. (BL 6812)
                                      Dina Leytes, Esq.
                                      45 Main Street
                                      Suite 608
                                      Brooklyn, New York  11201
                                      (718) 423-9323
                                      Attorneys for Plaintiff